USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ____3/31/22____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **JD ANDERSON ET AL.,** |
| **Plaintiffs,** |
| **-against-** |
| **BINANCE ET AL.,** |
| **Defendants.** |

**1:20-cv-2803 (ALC)**
**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Before the Court is Defendants' motion to dismiss Plaintiffs' putative class action. ECF No. 58. For the reasons that follow, Defendants' motion to dismiss is granted.

## BACKGROUND

The following facts are taken from allegations contained in Plaintiffs' Second Amended Class Action Complaint ("SAC") and are presumed to be true for purposes of resolving Defendants' motion to dismiss. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Plaintiffs are investors who bought certain digital tokens—EOS, QSP, KNC, TRX, FUN, ICX, OMG, LEND, and ELF—on Defendant Binance, a digital exchange.[1] Digital tokens may operate as "utility tokens," which permit the holder of the token to participate in projects associated with the token, or as "security tokens," which function similarly to a traditional security and are classified as securities under federal and state law. Accordingly, issuers of security tokens must file registration statements with the U.S. Securities and Exchange Commission ("SEC") and a platform where security tokens are traded must register with the SEC as an exchange.

---

[1] Binance's headquarters are located in Malta. Defendant Changpeng Zhao is the Chief Executive Officer of Binance and resides in Taiwan.

1

Plaintiffs allege that, beginning on July 1, 2017, Defendants promoted, offered, and sold in the United States the above-referenced digital tokens through Binance. Issuers would sell tokens to investors in an initial coin offering ("ICO"), listing the token on Binance. Binance would then promote the sale of the tokens. Issuers compensated Binance for listing their tokens and Binance received a percentage of each trade.

According to Plaintiffs, Binance's representations did not make clear to investors upon purchase that the tokens were securities. Investors were only apprised of the tokens' status as securities on April 3, 2019, when the SEC issued a report, "The Framework for 'Investment Contract' Analysis of Digital Assets" ("Framework"), which categorized the tokens as securities under Section 2 of the Securities Act of 1933 ("Securities Act") and Section 3 of the Securities Exchange Act of 1934 ("Exchange Act").

## PROCEDURAL HISTORY

Plaintiffs initiated this Action on April 3, 2020. ECF No. 1. On August 26, 2020, the Court appointed lead plaintiffs and designated co-lead counsel. ECF No. 40. On September 11, 2020, Plaintiffs filed an Amended Class Action Complaint. ECF No. 43. On December 15, 2020, Plaintiffs filed a Second Amended Class Action Complaint. ECF No. 55. The complaint contains 327 pages and includes 154 causes of action, five of which allege violations of federal laws. Plaintiffs allege that, in violation of the Securities Act, the Exchange Act and state Blue Sky protections, Defendants did not register Binance as an exchange or a broker dealer and Binance did not file a registration statement for the securities it sold. Thus, investors were not afforded the protections of securities laws and were not made aware of the risks of their investments.

On February 16, 2021, Defendants filed the instant motion to dismiss. ECF No. 58. After Defendants filed their motion to dismiss, Plaintiffs voluntarily dismissed individual defendants

Yi He and Roger Wang. ECF No. 63. Plaintiffs filed their opposition on April 19, 2021. ECF No. 64. In their opposition, Plaintiffs abandoned their claims related to the BNT, CVC, and SNT tokens. *Id*. at 3 n.3.  On June 3, 2021, Defendants filed their reply in support of their motion to dismiss. ECF No. 66.

## STANDARD OF REVIEW

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Additionally, "[a]lthough the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (internal quotation marks and citations omitted).

## DISCUSSION

Plaintiffs bring federal claims against Defendants pursuant to Section 12(a)(1) of the Securities Act and Section 29(b) of the Exchange Act. Second Am. Compl., ECF No. 55 ¶¶ 362–404; 15 U.S.C. §§ 77*l*(a)(1), 78cc. Plaintiffs also bring state Blue Sky claims under 28 U.S.C. § 1367(a) and 28 U.S.C. § 1332. As discussed below, Plaintiffs' claims are dismissed because the relevant securities laws do not apply extraterritorially and because they are barred by the statute of limitations.

### I.  Statute of Limitations

#### a.  Securities Act Claims

Claims brought under Section 12(a)(1) of the Securities Act must be brought "within one year after the violation upon which it is based." 15 U.S.C. § 77m. The parties agree that seven of the nine tokens at issue—QSP, KNC, FUN, ICX, OMG, LEND, and ELF—were last purchased in 2018, more than a year before this action was brought. Plaintiffs argue that the Court should apply the equitable doctrines of injury evading discovery or the fraud-based discovery rule and accordingly hold that the limitations period was not triggered until April 3, 2019, when the Framework was published. Pls.' Br., ECF No. 64 at 19. Until the Framework was issued, Plaintiffs argue, investors did not have the requisite information to determine whether the tokens were securities or whether Defendants' statements about the tokens' status were fraudulent. *Id*.

Plaintiffs' arguments fail. As Plaintiff acknowledges, Section 12(a)(1) does not include a statutory discovery rule. *Id*. The Supreme Court has warned against adopting an "expansive approach to the discovery rule," and applying an "[a]textual judicial supplementation [which] is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019). Section 12(a)(1)

explicitly states that the limitations period runs upon the occurrence of the violation, not the discovery of the violation, and "[i]t is not [the courts'] role to second-guess Congress' decision to include a 'violation occurs' provision, rather than a discovery provision." *Id*. Indeed, Courts in this District have dismissed as untimely similar claims brought by Plaintiffs' counsel, rejecting the plaintiffs' argument for applying a discovery rule. *See In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 338–39 (S.D.N.Y. 2021); *see also Holsworth v. BProtocol Found.*, No. 20-cv-2810 (AKH), 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021).

The claims related to the sales of the two tokens—EOS and TRX—which Plaintiffs allege were bought within one year of initiating this case are also time barred. Under Section 12(a)(1), Plaintiffs may only bring claims against a defendant who is a statutory seller, which is defined as a defendant who "(1) passed title or other interest in a security to a buyer for value, or (2) successfully solicit[ed] the purchase." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting *Pinter v. Dahl,* 486 U.S. 622, 642, 647 (1988)). Plaintiffs contend that Defendants are statutory sellers because they are "entities and individuals that solicited the sale of securities." Pls.' Br. at 2.[2] Defendants' latest act of solicitation with respect to these two tokens is Binance's republication of investor reports in November 2018 and February 2019, more than a year before Plaintiffs initiated this Action. SAC ¶¶ 100(d), (l). The statute of limitations runs for one year "after the violation upon which it was based," and the violation alleged for the Section 12(a)(1) claim is solicitation, which occurred earlier than one year of filing. 15 U.S.C. § 77(m) Thus, the claims related to EOS and TRX are also untimely.

**b. Exchange Act**

---

[2] Plaintiffs briefly argue as an alternative that Defendants are also statutory sellers because they passed title to Plaintiffs; their opposition brief states that Binance users "must first transfer the desired crypto-assets to Binance's control by executing a transaction on the Ethereum blockchain." Pls.' Br. at 10 (citing SAC ¶ 58). However, the cited paragraph does not support this assertion.

Section 29(b) has a one-year statute of limitations, however, unlike Section 12(A)(1), the statute of limitations has a discovery rule by which the limitations periods only begins to run within one year after the "discovery that [the] sale or purchase involves [a] violation." 15 U.S.C. § 78cc. *See also Alpha Cap. Anstalt v. Oxysure Sys., Inc*., 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) ("[The] one-year statute of limitations for any implied cause of action under Section 29(b) of the Exchange Act. . . . runs from the time when an individual could have, through the exercise of reasonable diligence, discovered the fraud at issue." (internal quotation marks and citations omitted)).

Under Section 29(b),"[e]very contract made in violation of any provision of this chapter" and "every contract (including any contract for listing a security on an exchange) . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter . . . shall be void." 15 U.S.C. § 78cc. Plaintiffs must "show that (1) the contract involved a prohibited transaction, [and] (2) [the plaintiffs are] in contractual privity with the defendant." *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc*., 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (internal quotation marks and citations omitted). Plaintiffs' Section 29(b) claims are based on allegations that Binance formed illegal contracts and that those contracts were illegal due to Binance's operation as an unregistered exchange. However, Plaintiffs do not allege that they were unaware the exchange was not registered; in fact, the complaint alleges that Plaintiffs knew that Binance was unregistered. *See, e.g*., SAC ¶ 330 ("It is well known that VPNs are necessary for U.S. purchasers to access unregistered crypto-asset exchanges, like Binance."). Thus, the Section 29(b) claims are untimely as Plaintiffs knew of the violation, that the exchange was not registered, earlier than one year prior to filing.

Plaintiffs argue that they only could have discovered that the tokens were securities on April 3, 2019, when the Framework was published. However, "[u]nder a discovery rule, the claim accrues when the plaintiff learns of the critical <u>facts</u> that he has been hurt and who has inflicted the injury." *In re Bibox*, 534 F.Supp.3d at 339 (quoting *Rotella v. Wood*, 528 U.S. 549, 556 (2000)). The Framework did not reveal new facts, and therefore, it does not delay the accrual of the Section 29(b) claims. As Judge Cote wrote:

> Here, the plaintiff does not allege that he only learned on April 3, 2019 of "critical facts" regarding [the tokens]. Rather, he claims that he did not learn of his potential legal rights under § [29 (b)] until the SEC released the Framework on April 3, 2019. Ignorance of legal rights does not delay the accrual of a claim under a discovery rule. In any event, the Framework is merely a non-binding agency interpretation of the longstanding [*S.E.C. v. W.J. Howey Co*., 328 U.S. 293 (1946)] test and did not create new rights.

*Id*.; *see also id*. at 341 ("The plaintiff did not learn of any 'critical facts' regarding his injury when the SEC issued the Framework on April 3, 2019 . . . but rather learned only of the SEC's nonbinding interpretation of *Howey*."). The issuance of the Framework does not toll the accrual of Plaintiffs' claims.

## II.     Extraterritoriality

The federal securities laws apply to those "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267 (2010) (discussing Exchange Act); *see also id*. at 268 ("The same focus on domestic transactions is evident in the Securities Act of 1933."); *In re Smart Techs., Inc. S'holder Litig*., 295 F.R.D. 50, 55–56 (S.D.N.Y. 2013) ("*Morrison*'s prohibition on extraterritoriality applies to Securities Act claims."). An exchange is considered "domestic" if it registers as a "national securities exchange." *See Morrison*, 561 U.S. at 266–67. An exchange need only register if a

"facility of [the] exchange [is] within or subject to the jurisdiction of the United States." 15 U.S.C. § 78e. Binance does not meet these criteria.

First, although Plaintiffs allege that much of Binance's infrastructure is based in the U.S., they only identify as U.S.-based infrastructure Amazon Web Services computer servers, which host Binance, and the Ethereum blockchain computers, which facilitate certain transactions on Binance. Such third-party servers and third parties' choices of location are insufficient to deem Binance a national securities exchange. *See, e.g.*, *Sonterra Capital Master Fund v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 582 (S.D.N.Y. 2017) (stating in the RICO context that, "being routed through computer servers into New York . . . . do[es] not . . . render plaintiffs' RICO claims domestic in nature"); *see also Holsworth*, 2021 WL 706549, at *3. Plaintiffs provide no caselaw to support the claim that Binance's other alleged U.S. contacts—inclusion of English language on the Binance website, several employees located in California, and job postings in the U.S.—are sufficient to constitute a domestic exchange.

Additionally, the transactions themselves, as alleged, cannot qualify as domestic. A transaction is domestic if "irrevocable liability is incurred or title passes within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 66, 67 (2d Cir. 2012). Plaintiffs must allege more than stating that Plaintiffs bought tokens while located in the U.S and that title "passed in whole or in part over servers located in California that host Binance's website." SAC ¶¶ 17, 19, 20, 22; *see City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 187 (2d Cir. 2014) (trade not considered domestic on the basis that the purchaser "places a buy order in the United States for the purchase of foreign securities on a foreign exchange").

Plaintiffs' Blue Sky claims also fail for the same reason. Plaintiffs bring claims under the Blue Sky laws of the following five jurisdictions where the named plaintiffs allegedly placed their

trades over Binance: California, Florida, Nevada, Puerto Rico, and Texas.[3] Although the Second Amended Complaint asserts claims under the Blue Sky laws of 49 U.S. jurisdictions, Plaintiffs allegedly made their trades only from those states listed above. Therefore, claims asserted under other states' Blue Sky statutes are dismissed as there is an insufficient nexus between the allegations and those jurisdictions. *See Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 156 (2d Cir. 2017) (Blue Sky laws "only regulate[] transactions occurring within the regulating States" (internal quotation marks and citations omitted)); *see also In re Bibox*, 534 F. Supp. 3d at 334 ("Where, as here, a named class action plaintiff brings state law claims that may not be brought by the named plaintiff, but may be brought by putative class members, courts typically address only the state law claims of the named plaintiff at the motion to dismiss stage and do not address the standing and merits arguments with respect to the additional state law claims . . . .").

Second, the claims brought under California, Florida, Nevada, Puerto Rico, and Texas are also dismissed on account of the extraterritorial nature of the transactions at issue. Courts often analyze Blue Sky laws in relation to their federal counterparts. *See, e.g., Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705 (DLC), 2014 WL 241739, at *12–13 (S.D.N.Y. Jan. 22, 2014) (citing Texas cases holding that Texas courts look toward federal court decisions when interpreting the Texas Securities Act because of the similarities between Texas and federal securities laws); *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1260 (M.D. Fla. 2010) (stating that "Florida courts look to [federal securities] laws when interpreting [Florida Blue Sky laws]"); *SDM Holdings, Inc. v. UBS Fin. Servs., Inc. of Puerto Rico*, No. 12-cv-1663, 2016 WL 9461324, at *6 (D.P.R. Mar. 1, 2016) (noting that a Puerto Rico Blue Sky claim is "for all practical

---

[3] The complaint also alleges that trades were placed from New York, however the Complaint does not bring any claims under New York law.

purposes a verbatim repetition of [an Exchange Act] claim" (internal quotations and citations omitted)), *report and recommendation adopted sub nom. Roman v. UBS Fin. Servs., Inc. of Puerto Rico*, No. 12-cv-1663, 2016 WL 9460664 (D.P.R. Sept. 30, 2016); *Konopasek v. Ten Assocs., LLC*., No. 18-CV-00272, 2018 WL 6177249, at *5 (C.D. Cal. Oct. 22, 2018) (applying definitions from federal securities law in dismissing California Blue Sky claims). Thus, as the federal claims fail due to extraterritoriality, the state claims are also dismissed because the relevant laws do not apply extraterritorially.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED and the Second Amended Complaint is DISMISSED. The parties' requests for oral argument are DENIED. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 58, 68, 69.

**SO ORDERED.**

**Dated:** **March 31, 2022**
      **New York, New York**
                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**